UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

BERNATELLO'S PIZZA, INC.,

        Plaintiff,

      v.

HANSEN FOODS, LLC,

        Defendant.

Case No:  16-cv-35

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Harry E. Van Camp (SBN: 1018568)
Craig Fieschko (SBN: 1019872)
Elijah B. Van Camp (SBN: 1100259)
Two East Mifflin Street, Suite 600
Madison, WI  53703-2865
608-255-8891
hvc@dewittross.com
evc@dewittross.com

**ATTORNEYS FOR PLAINTIFF,
BERNATELLO'S PIZZA, INC.**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

I.   BERNATELLO'S MANUFACTURES AND DISTRIBUTES FROZEN PIZZAS. ............. 3

     A.   Bernatello's Distributes Pizza Varieties Throughout The Midwest Region And
          Other Geographic Areas. ..................................................................................3

     B.   The Frozen Pizza Market Is Competitive And Consumers Are Typically
          Impulse Buyers. ...............................................................................................3

II.  BERNATELLO'S OWNS AND USES THE TRADEMARK BREW IN
     MANUFACTURING AND DISTRIBUTING ITS BREW PUB PIZZAS IN THE
     MIDWEST REGION MARKETPLACE. ................................................................ 4

     A.   Bernatello's Launched BREW PUB Frozen Pizza In October 2012. ...........................4

     B.   Bernatello's Owns And Uses Registered BREW Trademark Varieties Related To
          Its BREW PUB Pizza. .......................................................................................6

     C.   Bernatello's Has Spent Millions Of Dollars Marketing And Advertising BREW
          PUB Pizza. .....................................................................................................7

     D.   Bernatello's Distributes BREW PUB Throughout The Midwest Region. ...................7

     E.   Bernatello's BREW PUB Sales Reach Nearly $40 Million in 2015. ..........................9

III. HANSEN DEVELOPS, MANUFACTURES, AND DISTRIBUTES PREMIUM FROZEN
     PIZZAS BRANDED BREWHAUS AND BREW TIME IN THE MIDWEST REGION
     MARKETPLACE. ........................................................................................... 10

     A.   Hansen Distributes Pizza Varieties Throughout The Midwest Region. ..................10

     B.   Hansen Rebranded BIG BEN Super-Premium Frozen Pizza As BREWHAUS
          Super-Premium Frozen Pizza And Sells BREWHAUS In The Same Grocery
          Stores As Bernatello's BREW PUB Super-Premium Frozen Pizza. ..........................10

     C.   Hansen Developed BREW TIME Super-Premium Frozen Pizza And Sells
          BREW TIME In The Same Grocery Stores As Bernatello's BREW PUB
          Super-Premium Frozen Pizza. ...........................................................................11

     D.   Bernatello's Learned Of Hansen's Development Of BREWHAUS And BREW
          TIME Pizzas And Distribution Into The Same Stores As BREW PUB Pizza. ...........12

IV.  THERE IS A STRONG LIKELIHOOD OF CONSUMER CONFUSION REGARDING
     THE AFFILIATION BETWEEN BERNATELLO'S BREW PUB AND HANSEN'S
     BREWHAUS OR BREW TIME FROZEN PIZZAS. ............................................... 12

     A.   Hansen's BREWHAUS And BREW TIME Pizzas Will Be Sold In The Same
          Geographic Markets And Stores To The Same Consumers As Bernatello's
          BREW PUB Pizza. ..........................................................................................12

     B.   Frozen Pizza Distributors Have Refused To Carry Hansen's BREWHAUS
          Frozen Pizzas For Fear Of Consumer Confusion With Bernatello's BREW
          PUB Pizza. .....................................................................................................13

     C.   Frozen Pizza Retailers Have Experienced Confusion Between Hansen's
          BREW TIME And Bernatello's BREW PUB Pizza. ...............................................15

ARGUMENT ............................................................................................................................. 16

I.   THE STANDARD TO OBTAIN A PRELIMINARY INJUNCTION IS LOW. ................. 16

II.  BERNATELLO'S LANHAM ACT CLAIMS, 15 U.S.C. §§ 1125(A) & 1114(A) (COUNTS I AND II), HAVE MORE THAN A NEGLIGIBLE CHANCE OF SUCCESS ON THE MERITS. .......................................................................................................................... 16

    A.   BREW Is A Valid, Protectable Trademark. ................................................................ 17

    B.   Hansen's Use Of BREW In Branding Its Frozen Pizza Creates A Likelihood Of Confusion As To The Source Or Affiliation Of Hansen's Frozen Pizza Brands Utilizing BREW. .......................................................................................... 18

        1.   Hansen's BREWHAUS and BREW TIME marks are substantially similar to Bernatello's BREW PUB mark. ........................................................ 19

        2.   Bernatello's and Hansen both use Bernatello's marks to advertise substantially similar products (frozen pizza). ..................................................... 20

        3.   Hansen's BREWHAUS and BREW TIME pizzas will be sold in the same area and manner as Bernatello's BREW PUB pizza. ................................. 21

        4.   The average consumer exercises a low degree of care in purchasing frozen pizzas. .......................................................................................................... 22

        5.   The BREW PUB brand and mark is strong. ........................................................ 23

        6.   Frozen pizza retailers have experienced confusion between Hansen's BREWHAUS or BREW TIME pizzas and Bernatello's BREW PUB pizzas........................................................................................................................ 24

        7.   Hansen intentionally copied Bernatello's BREW PUB brand when creating its BREWHAUS and BREW TIME brands......................................... 24

    C.   Bernatello's Has No Adequate Legal Remedy And Will Suffer Irreparable Harm If Its Request For A Preliminary Injunction Is Denied. .................................... 25

    D.   The Balance Of Harms Weighs In Bernatello's Favor. ............................................. 27

    E.   Granting Injunctive Relief Is In The Public Interest. ................................................. 28

III.  BERNATELLO'S REQUESTED INJUNCTION. .............................................................. 29

CONCLUSION ....................................................................................................................... 30

**INTRODUCTION**

Bernatello's Pizza, Inc. ("Bernatello's") is a family owned and operated business that has manufactured and distributed frozen pizzas since 1982 to various grocery and convenience stores throughout the Midwest region and beyond. In October of 2012, Bernatello's launched a new variety of frozen pizza, branded as BREW PUB, that has a super-premium tavern-style, craft pizza appeal unique to the Midwestern frozen pizza industry. Bernatello's owns various BREW federal trademark registrations and applications under which it produces its BREW PUB pizza. Bernatello's has invested over $3.9 million and countless hours in research, advertising, and marketing to make its BREW PUB and BREW trademarks well-known and recognized throughout the Midwest and other regions. Bernatello's has been incredibly successful at selling its BREW PUB frozen pizzas under the BREW trademarks, boasting $39.8 million in sales at the end of 2015. BREW PUB is the top super-premium pizza in the Midwest.

Hansen Foods, LLC ("Hansen"), a direct competitor of Bernatello's, also manufactures frozen pizza for distribution in the Midwest region.  Recently, Hansen has attempted to misappropriate Bernatello's goodwill and to deceive Bernatello's customers by adopting Bernatello's "BREW" term and using it for itself in a similar line of frozen pizzas named BREWHAUS and BREW TIME.

This is not Hansen's first attempt to promote its own super-premium style pizza. Hansen's previous attempt, branded "BIG BEN," was a market failure, and Hansen discontinued the brand. Shortly thereafter, Hansen "rebranded" its BIG BEN pizzas to incorporate the same BREW terminology used by Bernatello's. In fact, in a sell sheet used to market Hansen's BREW pizzas, the pizzas are described as "a private brand solution" for the "Brew Pub" style pizza category.  The sell sheet further identifies Bernatello's BREW PUB pizza by name and states:

"[l]ike the brand, our Brew Time pizzas claim ½ pound of real cheese and are heavily topped with premium ingredients. The Brew Time brand can offer your customers a more affordable private brand alternative that delivers the same high quality pizza . . ."

After failing to grow sales of its own brand of super-premium pizzas, Hansen intentionally chose to mimic the BREW PUB brand to take advantage of the enormous investment Bernatello's has made – and to skip the cost and effort of establishing its own distinctive brand. In addition to adopting the dominant BREW aspect of Bernatello's BREW PUB trademark, Hansen's BREWHAUS and BREW TIME pizzas are also marketed as super-premium pizzas and produced to look similar to Bernatello's BREW PUB pizza. Hansen's use of BREW is not only likely to cause confusion, it *already has* resulted in confusion among grocery stores distributing both brands.

This Court should intervene to prevent public harm and irreparable damage to Bernatello's BREW PUB brand by enjoining Hansen from utilizing the mark BREW in relation to its BREWHAUS and BREW TIME frozen pizzas. Failure to enjoin Hansen will cause further consumer confusion and irreparable harm to the goodwill and renown of Bernatello's BREW PUB pizza and associated trademarks.

Accordingly, for the reasons set forth more fully below, Bernatello's requests that the Court preliminarily enjoin Hansen from using the names BREWHAUS, BREW TIME, or any other name or trademark that incorporates BREW, or that is otherwise confusingly similar to BREW PUB.

<center>**STATEMENT OF FACTS**</center>

**I.      BERNATELLO'S MANUFACTURES AND DISTRIBUTES FROZEN PIZZAS.**

**A.      Bernatello's Distributes Pizza Varieties Throughout The Midwest Region And Other Geographic Areas.**

Bernatello's is a family owned and operated business that has manufactured and distributed frozen pizza varieties since 1982.  (PFOF ¶¶ 1, 3.)[1]  Bernatello's is in the business of producing and selling frozen pizza products to grocery stores, convenience stores, taverns, schools, club stores, food service providers, fundraising organizations, and other channels throughout Wisconsin, the Midwest and its other geographic markets.  (PFOF ¶ 4.)

Bernatello's manufactures pizzas under its own brands, including BREW PUB, BELLATORIA, ORV'S, and ROMA.  (PFOF ¶ 5.)  These brands vary in price point, quality of ingredients, and packaging to target different consumer groups within the frozen pizza market.  (PFOF  ¶ 6.)   Bernatello's distributes its frozen pizza varieties to various grocery and convenience stores throughout the Midwest region, including Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and Michigan.  (PFOF ¶ 7.)  In addition, the BREW PUB and BELLATORIA brands are located in select regions throughout the United States through direct warehouse programs and club stores.  (PFOF ¶ 8.)

**B.      The Frozen Pizza Market Is Competitive And Consumers Are Typically Impulse Buyers.**

Since frozen pizzas are relatively inexpensive products which are frequently purchased by consumers without detailed scrutiny of the goods and their brands, an average frozen pizza consumer is typically an "impulse buyer."  (PFOF ¶ 9.)  Bernatello's BREW PUB frozen pizzas

---

[1] "PFOF" refers to Statement of Proposed Facts in Support of Bernatello's Motion for Preliminary Injunction Simultaneously filed.

are widely accessible and relatively inexpensive for consumers to obtain in the upper Midwest and in Bernatello's other markets.  (PFOF ¶ 10.)

There are different tiers of pizza organized by quality and price points, which range from more affordable to super-premium.  (PFOF ¶ 11.)  More consumers have been spending their money on restaurant pizza rather than frozen pizza, because they feel that store-bought pizza is not as good as restaurant pizza.  (PFOF ¶ 12.)

There is fierce competition among pizza brands.  (PFOF ¶ 13.)  As a frozen pizza manufacturer and distributor in the Midwest region, Bernatello's directly competes with other frozen pizza manufacturers and distributors in Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and Michigan.  (PFOF ¶ 15.)  The frozen pizza market is highly promotion-driven, and consumers tend to migrate between brands that are on sale.  (PFOF ¶ 14.)  With its BREW PUB pizza, Bernatello's sought to "raise the bar" for frozen pizzas and establish a brand with a high level of consumer loyalty.  (PFOF ¶¶ 17, 21.)

## II.  BERNATELLO'S OWNS AND USES THE TRADEMARK BREW IN MANUFACTURING AND DISTRIBUTING ITS BREW PUB PIZZAS IN THE MIDWEST REGION MARKETPLACE.

### A.  Bernatello's Launched BREW PUB Frozen Pizza In October 2012.

In October 2012, Bernatello's launched a new variety of frozen pizza branded as BREW PUB.  (PFOF ¶ 16.)  Bernatello's objective in developing BREW PUB frozen pizzas was to produce a super-premium brand that would "raise the bar" on the quality of frozen pizza.  (PFOF ¶ 17.)  The initial brand ideation was to communicate a place in the consumer's mind: a pleasant and relaxed locale and experience.  (PFOF ¶ 18.)  In addition, Bernatello's wanted to convey an impression of respite and relaxation through its branding.  (PFOF ¶ 19.)  Bernatello's marketing consultants believed that the growing popularity of the upscale club and pub scene provided a natural opening for a super-premium product that would resonate with the BREW crowd and

beyond.  (PFOF ¶ 20.)  Bernatello's goal was to develop BREW PUB as the "craft pizza" of frozen pizza, much like the craft beer industry, and establish a distinctive and fresh brand with a high level of consumer loyalty.  (PFOF ¶ 21.)  The BREW PUB label also includes a design of a keg tap to further the "craft beer" and "pub" associations in consumers' minds.  (PFOF ¶ 22.)

BREW PUB pizza was designed with unique ingredients and packaging distinct from its competitors to target consumers in the marketplace for a super-premium frozen pizza.  (PFOF ¶ 23.)  Bernatello's believed that consumers wanted better quality frozen pizza and sought to develop a pizza that would compete with restaurant quality.  (PFOF ¶ 24.)  Bernatello's marketing team developed unique product characteristics related to product quality and packaging to position BREW PUB as a super-premium frozen pizza product and differentiate BREW PUB from other frozen pizza varieties.  (PFOF ¶ 25.)  The BREW PUB pizza retails at $10.99.  (PFOF ¶ 26.)

BREW PUB is produced with high quality, premium ingredients.  (PFOF ¶ 27.)  BREW PUB contains more than a half pound of wide-dimensioned, thickly shredded, real Wisconsin mozzarella cheese.  (PFOF ¶ 28.)  The cheese is placed over the other toppings to give consumers a visual affirmation of the quality and quantity of ingredients.  (PFOF ¶ 29.)  BREW PUB pizzas are manufactured in twelve varieties in the multi-serve line, and five varieties in the single serve line, most of which include premium toppings to complement the high quality Wisconsin cheese.  (PFOF ¶ 30.)  Such toppings include, among others, premium large sausage nuggets, premium sliced mushrooms, and premium roasted vegetable strips.  (PFOF ¶ 27.)  BREW PUB ingredients were selected through an internal test panel.  (PFOF ¶ 31.)

Additional features related to BREW PUB's packaging were developed and adopted to differentiate BREW PUB frozen pizza from other frozen pizzas in the market.  (PFOF ¶ 32.)

Each BREW PUB pizza is sealed in clear wrap with a small, circular label on the top center of the pizza known as "bullseye" packaging. (PFOF ¶ 33.) This packaging provides consumers with a visual on the quality and quantity of BREW PUB's ingredients. (PFOF ¶ 34.) In addition, this packaging was designed to give BREW PUB frozen pizzas a homemade tavern-style feel targeting a "craft pizza" look. (PFOF ¶ 35.) This packaging also differentiated BREW PUB from other National brands that carton (that is, box) premium and super-premium brand frozen pizzas. (PFOF ¶ 36.)

### B. Bernatello's Owns And Uses Registered BREW Trademark Varieties Related To Its BREW PUB Pizza.

Bernatello's produces its BREW PUB pizza with a label having separately distinguishable BREW aspects, i.e. BREW PUB, and/or BREW PUB PIZZA, and/or BREW PUB PIZZA and Design. (PFOF ¶ 37.) Bernatello's owns federal trademark registrations and applications pertaining to the BREW PUB pizza it produces, including at least the following: BREW PUB PIZZA (U.S. Registration No. 4,373,576), BREW PUB PIZZA and Design (U.S. Registration No. 4,431,990), BREW PUB (Application Serial No. 86/978,114), IT'S BREW TIME (Application Serial No. 86/870,938), and BREW (Application Serial No. 86/838,514) ("BREW trademarks"). (PFOF ¶ 38.) The BREW trademarks, or some of them, have been used exclusively and continuously throughout the Midwest region of the United States at least as early as October 23, 2012. (PFOF ¶ 39.)

At the time BREW PUB frozen pizza entered the market, it was the only frozen pizza utilizing the term BREW in its brand name. (PFOF ¶ 40.) Based on research by Bernatello's marketing consultants, a customer who hears of a BREW type of frozen pizza product will associate the product with BREW PUB due to the quality of the BREW PUB product and strength of the brand. (PFOF ¶ 41.)

## C. Bernatello's Has Spent Millions Of Dollars Marketing And Advertising BREW PUB Pizza.

Bernatello's has directed extensive advertising and marketing strategies to make its BREW trademarks well known and recognized throughout the Midwest and other geographic markets as connected to its BREW PUB pizza. (PFOF ¶ 42.)  Beginning in 2012 and through December 31, 2015, Bernatello's has spent a total of $3,920,486 on advertising and marketing the BREW PUB brand.  (PFOF ¶ 43.)  Over the last 3.25 years, Bernatello's has spent the following amounts on advertising and marketing the BREW PUB brand annually: $45,559 in 2012; $1,303,031 in 2013; $1,181,532 in 2014; and, $1,390,364 in 2015.  (PFOF ¶ 44.)

Based on more than $3.9 million Bernatello's has spent on marketing and advertising, the growing presence of BREW PUB in the marketplace, and ever-increasing sales figures, Bernatello's has established a strong association in the frozen pizza market between the term BREW and its BREW PUB pizza.  (PFOF ¶ 45.)  The BREW PUB brand has grown in recognition and association among frozen pizza consumers.  (PFOF ¶ 46.)  Customers associate BREW PUB pizza with high quality ingredients and recognize the brand through Bernatello's many advertising and marketing efforts.  (PFOF ¶ 47.)

Bernatello's undertakes extensive efforts and significant spending in the advertising and marketing of its BREW PUB brand, including efforts and dollars spent for creation and purchase of advertisements, event sponsorships, in-store promotions, and other marketing efforts.  (PFOF ¶ 48.)  One specific advertising and marketing effort unique to BREW PUB in the super-premium market has been the use of an oven-equipped trailer marked with BREW PUB's brand to cook and serve BREW PUB pizza at various locations and events.  (PFOF ¶ 49.)

## D. Bernatello's Distributes BREW PUB Throughout The Midwest Region.

As of 2012, all of the super-premium pizzas in the United States were of limited,

localized distribution.  (PFOF ¶ 50.)  BREW PUB was the first super-premium pizza in the United States offered on a regional basis to the upper Midwest, and it has been an overnight success.  (PFOF ¶ 51.)

Bernatello's is now the top supplier of frozen pizza in the Minnesota and Wisconsin markets.[2]  (PFOF ¶ 52.)  Bernatello's primary means of distribution is with its own Direct Store Delivery ("DSD") system.  (PFOF ¶ 53.)  The DSD system consists of 52 truck routes and a sales team of 112.  (PFOF ¶ 54.)  This DSD system distributes primarily to grocery stores in Wisconsin, Minnesota, the Upper Peninsula of Michigan, Iowa, North and South Dakota. (PFOF ¶ 55.)  Bernatello's pizzas are sold in over 2,100 DSD locations.  (PFOF ¶ 56.)

Bernatello's also utilizes distributors such as Trimart, U.S. Foods, Holiday Wholesale, Power Play, Englehart, Upper Lakes, and Barnes, among others, that operate in and around Bernatello's current DSD System.  (PFOF ¶ 57.)  These distributors focus primarily on small format businesses (*e.g.,* convenience stores, taverns, restaurants, and hotels) and also fulfill distribution to grocery stores at the outer boundaries of Bernatello's DSD system.  (PFOF ¶ 58.)  In addition, the BELLATORIA and BREW PUB brands are located in select regions throughout the United States through direct warehouse programs and club stores.  (PFOF ¶ 59.)  With the distributor and direct warehouse programs there are over 1,500 estimated additional locations. (PFOF ¶ 60.)

As a frozen pizza manufacturer and distributor in the Midwest region, Bernatello's directly competes with other frozen pizza manufacturers and distributors in Wisconsin, Minnesota, Iowa, North Dakota, South Dakota, and Michigan.  (PFOF ¶ 61.)

---

[2] According to AC Nielsen, a global marketing research firm, Bernatello's has the first and/or second largest dollar market shares by company for the frozen pizza market. (Schultz Decl., ¶ 40 & Ex. G.)

E.      **Bernatello's BREW PUB Sales Reach Nearly $40 Million in 2015.**

Bernatello's has sold millions of BREW PUB frozen pizzas under the BREW trademarks. (PFOF ¶ 62.)  Since Bernatello's BREW PUB pizza entered the marketplace in October 2012, its sales have steadily increased each year, as follows:

| Year End | Quantity | Sales |
|----------|----------|--------|
| 2013 | 2.4M | $12.8M |
| 2014 | 4.8M | $24.6M |
| 2015 | 7.8M | $39.8M |

(PFOF ¶ 63.)

For example, from September 2014 to September 2015, Bernatello's BREW PUB pizza ranked first among all frozen pizza brands in the Minneapolis, Minnesota market selling 2,543,052 units totaling $13,992,719 in sales.  (PFOF ¶ 64.)  From September 2014 to September 2015, Bernatello's BREW PUB pizza ranked second among all frozen pizza brands in the Milwaukee, Wisconsin market selling 849,653 units totaling $5,044,560 in sales.  (PFOF ¶ 65.) From September 2014 to September 2015, Bernatello's BREW PUB pizza ranked first among all frozen pizza brands sold in Lunds & Byerlys grocery store selling 240,975 units totaling $1,273,068 in sales.  (PFOF ¶ 66.)  From September 2014 to September 2015, Bernatello's BREW PUB pizza ranked fourth among all frozen pizza brands sold in the Roundy's Supermarkets selling 400,612 units totaling $2,489,206 in sales.  (PFOF ¶ 67.)  From September 2014 to September 2015, Bernatello's BREW PUB pizza ranked first among all frozen pizza brands sold in Cub Foods selling 1,359,747 units totaling $7,214,386 in sales.  (PFOF ¶ 68.) From September 2014 to September 2015, Bernatello's BREW PUB pizza ranked second among all frozen pizza brands sold in Piggly Wiggly grocery store selling 481,221 units totaling $3,149,369 in sales.  (PFOF ¶ 69.)

III.  **HANSEN DEVELOPS, MANUFACTURES, AND DISTRIBUTES PREMIUM FROZEN PIZZAS BRANDED BREWHAUS AND BREW TIME IN THE MIDWEST REGION MARKETPLACE.**

A.  **Hansen Distributes Pizza Varieties Throughout The Midwest Region.**

Like Bernatello's, Hansen Foods, LLC ("Hansen") also manufactures and distributes frozen pizza in the Midwest region. (PFOF ¶ 70.) Hansen previously produced a super-premium frozen pizza branded BIG BEN that was in direct competition with Bernatello's BREW PUB super-premium frozen pizza. (PFOF ¶ 71.) Hansen uses identical channels of trade for selling its frozen pizza products as are used by Bernatello's. (PFOF ¶ 72.) In fact, Hansen's pizzas are sold in the same grocery stores and marketed to the same consumers as Bernatello's pizzas. (PFOF ¶ 73.)

B.  **Hansen Rebranded BIG BEN Super-Premium Frozen Pizza As BREWHAUS Super-Premium Frozen Pizza And Sells BREWHAUS In The Same Grocery Stores As Bernatello's BREW PUB Super-Premium Frozen Pizza.**

Hansen only chose to rebrand its super-premium pizza as BREWHAUS once its predecessor brand—BIG BEN—failed, and after Bernatello's BREW PUB pizza was established as the top super-premium frozen pizza seller in the Midwest region. (PFOF ¶ 74.) To illustrate the point, in the Milwaukee, Wisconsin frozen pizza market, BIG BEN's sales plummeted from $156,714 in 2013 to $31,742 by 2015, while Bernatello's BREW PUB had $5,044,560 in sales in the same market from September of 2014 to September of 2015. (PFOF ¶¶ 65, 75.)

In addition to adopting the dominant BREW aspect of Bernatello's BREW PUB mark, Hansen's BREWHAUS frozen pizza is also marketed as a super-premium pizza with estimated retail value of $10.99. (PFOF ¶ 76.) BREWHAUS is also produced with wide-dimensioned, thickly shredded cheese, premium ingredients on top of the cheese, and "bullseye" packaging.

(PFOF ¶ 77.)  Identical to Bernatello's BREW PUB advertising tactics, Hansen's has also utilized an oven-equipped trailer to advertise and serve its BREWHAUS pizza.  (PFOF ¶ 78.)

Hansen has very recently started selling BREWHAUS frozen pizzas in Wisconsin and Michigan.  (PFOF ¶ 79.)  Hansen's BREWHAUS pizzas are being distributed to at least the following grocery stores that also sell Bernatello's BREW PUB pizza: Woodman's, Festival Foods, Nilssen's Baldwin Wisconsin, and Marketplace Hayward and Rice Lake, Wisconsin. (PFOF ¶ 80.)

### C. Hansen Developed BREW TIME Super-Premium Frozen Pizza And Sells BREW TIME In The Same Grocery Stores As Bernatello's BREW PUB Super-Premium Frozen Pizza.

After Bernatello's BREW PUB had achieved great success in the Midwest frozen pizza market, Hansen developed another frozen pizza utilizing the BREW brand: BREW TIME pizza. (PFOF ¶ 81.)  In addition to adopting the dominant BREW aspect of Bernatello's BREW PUB mark, Hansen's BREW TIME frozen pizza is also marketed as a super-premium pizza, utilizing thickly shredded cheese placed atop premium ingredients and "bullseye" packaging.  (PFOF ¶¶ 81-82.)  Like Bernatello's BREW PUB pizza, the label of Hansen's BREW TIME pizza includes what appears to be a keg tap and the statement "contains over 1/2 pound of Real Wisconsin Cheese."  (PFOF ¶ 83.)

Hansen's BREW TIME pizza has also been sold as a control brand to Cash Wise/Coborn's which operates over 37 grocery stores in Wisconsin, Minnesota, North Dakota and South Dakota.  (PFOF ¶ 84.)  Bernatello's BREW PUB frozen pizza is also currently sold in all these stores and ranked first among all frozen pizza brands sold at Coborn's/Cash Wise. (PFOF ¶ 85.)

Hansen's BREW TIME pizza is being offered through Topco Associates, LLC's

("Topco") members and member distributors, including but not limited to wholesalers and retailers such as Hy-Vee, Affiliated Foods Midwest ("Affiliated") and Super Valu. (PFOF ¶¶ 86-87.) Notably, Affiliated has pulled back the curtain and revealed some of the true strategy underlying the BREW TIME brand. The Affiliated sell sheet informs its members that:

> The Brew Time brand was developed exclusively for Topco and our members by Hansen Foods (Green Bay, WI) as a private brand solution for what has recently emerged as a very popular & rapidly growing segment with the pizza category-the Brew Pub Style! Per IRI, the leading national brand, Lotza Mozza [sic], is 130% up in sales over the same period last year, and is expected to grow even more in 2016. Like the brand, our Brew Time pizzas claim ½ pound of real cheese and are heavily topped with premium ingredients. The Brew Time brand can offer your customers a more affordable private brand alternative that delivers the same high quality pizza that is just as capable of inducing a cheese coma.

(PFOF ¶ 88.) The sell sheet shows that BREW TIME will be distributed from a warehouse in Kenosha to be shipped March 19, 2016. (PFOF ¶ 89.)

### D. Bernatello's Learned Of Hansen's Development Of BREWHAUS And BREW TIME Pizzas And Distribution Into The Same Stores As BREW PUB Pizza.

Bernatello's saw, for the first time on January 13, 2016, that Hansen actually provided BREWHAUS branded frozen pizzas to grocery stores. (PFOF ¶ 90.) On December 30, 2015, Bernatello's became aware that Hansen was also selling a BREW TIME frozen pizza product. (PFOF ¶ 91.) Recently, Hansen filed a U.S. Intent to Use Trademark Application for the marks BREWHAUS as applied to pizzas (Application Serial No. 86/844,156). (PFOF ¶ 92)

## IV. THERE IS A STRONG LIKELIHOOD OF CONSUMER CONFUSION REGARDING THE AFFILIATION BETWEEN BERNATELLO'S BREW PUB AND HANSEN'S BREWHAUS OR BREW TIME FROZEN PIZZAS.

### A. Hansen's BREWHAUS And BREW TIME Pizzas Will Be Sold In The Same Geographic Markets And Stores To The Same Consumers As Bernatello's BREW PUB Pizza.

Hansen's BREWHAUS and BREW TIME pizzas will be sold in the same stores and

geographic areas that Bernatello's BREW PUB pizza is currently sold. (PFOF ¶ 93.) Hansen's BREWHAUS and BREW TIME pizzas will be competing in the same market as Bernatello's BREW PUB frozen pizza, and targeting the same consumers based on their similar name, price, packaging, and quality and quantity of ingredients. (PFOF ¶ 94.)

Prior to Hansen's adoption of the BREWHAUS and BREW TIME brands, Bernatello's enjoyed exclusive sales in the Midwest, since at least October of 2012, of frozen pizzas in the super-premium category selling under any trademark beginning with BREW in its mark. (PFOF ¶ 95.) Bernatello's has spent over $3.9 million on advertising and marketing its BREW PUB pizza, and as a result, the BREW trademarks have become well known among consumers as originating with Bernatello's. (PFOF ¶ 96.) By rebranding its BIG BEN pizza to BREWHAUS and producing BREW TIME pizzas, it appears Hansen is attempting to cause confusion, mistakes or to deceive consumers into believing that its products are Bernatello's BREW PUB pizzas, or are somehow connected thereto. (PFOF ¶ 97.) Hansen's BREWHAUS and BREW TIME brand names will confuse consumers into believing they are purchasing Bernatello's BREW PUB products from the same source. (PFOF ¶ 98.)

**B.      Frozen Pizza Distributors Have Refused To Carry Hansen's BREWHAUS Frozen Pizzas For Fear Of Consumer Confusion With Bernatello's BREW PUB Pizza.**

To the average consumer, Hansen's BREWHAUS and BREW TIME branded frozen pizza products appear to be virtually indistinguishable from Bernatello's BREW PUB frozen pizzas when displayed in grocery stores or convenience stores. (PFOF ¶ 99.) Even grocery store managers familiar with Bernatello's BREW PUB brand pizzas have expressed concern that there will be confusion if Hansen's BREWHAUS and BREW TIME pizzas are offered for sale in their stores. (PFOF ¶ 100.)   At least one grocery store has even refused to carry Hansen's

BREWHAUS pizza for fear of customer, and even employee, confusion with Bernatello's BREW PUB pizza.  (PFOF ¶ 101.)

Trig's is a full-service grocery store with locations throughout northern and central Wisconsin.  (PFOF ¶ 102.)  Trig's has sold Bernatello's BREW PUB frozen pizza since it was first introduced in November of 2012.  (PFOF ¶ 103.)  The introduction of BREW PUB was a fresh and creative offering to Trig's frozen pizza products.  (PFOF ¶ 104.)  In 2015, Trig's sold 109,934 units, making it the number one frozen pizza sold in Trig's stores.  (PFOF ¶ 105.)  Trig's also carries pizzas manufactured by Hansen such as PEP'S frozen pizzas.  (PFOF ¶ 106.)

On January 8, 2016, Alan Alden, Trig's Vice President of Sales, received an email from Cindy Egnarski, Hansen's sales representative, to explain that Hansen was rebranding its BIG BEN frozen pizza line to be called BREWHAUS.  (PFOF ¶ 107.)  Ms. Egnarski attached a sell sheet to her email depicting several BREWHAUS frozen pizza varieties.  (PFOF ¶ 108.)  After receiving and reviewing a sample of Hansen's BREWHAUS pizza, Mr. Alden believed Hansen's BREWHAUS pizza would confuse Trig's customers into believing the BREWHAUS pizza was somehow associated with Bernatello's BREW PUB pizza.  (PFOF ¶ 109.)  Mr. Alden believed that customers may mistakenly purchase a BREWHAUS pizza thinking it to be a BREW PUB pizza, or vice versa.    (PFOF ¶ 110.)    Further, Mr. Alden believes that carrying both BREWHAUS and BREW PUB pizzas at Trig's would result in internal confusion for employees.  (PFOF ¶ 111.)  The pizza brands are so similar Mr. Alden is concerned employees may place the wrong pizza on the other brand's shelf position or confuse product promotionals between BREWHAUS and BREW PUB leading to checkout delays, overall confusion, and inefficiency.  (PFOF ¶ 112.)  Due to this chance of customer and employee confusion, Trig's has decided not to carry or distribute Hansen's BREWHAUS pizza.  (PFOF ¶ 113.)

**C.** **Frozen Pizza Retailers Have Experienced Confusion Between Hansen's BREW TIME And Bernatello's BREW PUB Pizza.**

Another grocery store has experienced confusion regarding the source or affiliation of Hansen's BREW TIME pizza. (PFOF ¶ 122.) Coborn's operates over 120 grocery and convenience stores through the Midwest region. (PFOF ¶ 114.) Michael Gaetz, the Senior Category Manager at Coborn's, is responsible for ordering frozen pizza products and managing and arranging the stores' shelves for frozen pizza displays. (PFOF ¶ 115.) Bernatello's BREW PUB pizza is currently sold in all Cash Wish/Coborn's stores and is ranked first among all frozen pizza brands it sells. (PFOF ¶ 85.)

On or about December 29, 2015, Mr. Gaetz received notice that a new tavern style frozen pizza branded BREW TIME would soon become available for Coborn's stores. (PFOF ¶ 117.) The product specifications of BREW TIME showed that it was in the same super-premium category and carried a similar label as Bernatello's BREW PUB frozen pizza. (PFOF ¶ 118.) Based on Mr. Gaetz's awareness and dealing with Bernatello's BREW PUB pizza, he asked Trent Midas, District Manager for Bernatello's, if the new BREW TIME pizza was associated with Bernatello's. (PFOF ¶ 119.) On December 29, 2015, Mr. Gaetz sent an e-mail message to Mr. Midas asking for a meeting to go over the shelf layouts and logistics of carrying six varieties of the BREW TIME pizzas. (PFOF ¶ 120.) It was not until Mr. Gaetz talked with Mr. Midas that he learned BREW TIME was not associated with Bernatello's BREW PUB. (PFOF ¶ 121.) Mr. Gaetz has gained extensive knowledge of and exposure to frozen pizza brands as Senior Category Manager at Coburn's for 44 years, and he believes there is a reasonable probability that some customers will mistakenly purchase Hansen's BREW TIME pizza thinking it is Bernatello's BREW PUB pizza, or vice versa. (PFOF ¶ 122.)

# ARGUMENT

## I. THE STANDARD TO OBTAIN A PRELIMINARY INJUNCTION IS LOW.

To obtain preliminary injunctive relief, Bernatello's must demonstrate "(1) more than a negligible chance of success on the merits and (2) no adequate legal remedy and irreparable harm if preliminary relief is denied." *Bishops Bay Founders Grp., Inc. v. Bishops Bay Apartments, LLC,* 301 F. Supp. 2d 901, 906 (W.D. Wis. 2003). Once those two elements are established, Bernatello's must then show "(3) that the harm it would suffer if denied an injunction would outweigh the harm the defendant would suffer if the injunction issues; and (4) the public interest (non-parties) would not be affected negatively by an issuance of an injunction." *Wolf Appliance, Inc. v. Viking Range Corp.,* 686 F. Supp. 2d 878, 886 (W.D. Wis. 2010). These four factors are weighed using a "sliding scale" approach, so that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891-96 (7th Cir. 2001) (affirming grant of preliminary injunction on the sliding scale test). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* (internal quotations omitted).

## II. BERNATELLO'S LANHAM ACT CLAIMS, 15 U.S.C. §§ 1125(A) & 1114(A) (COUNTS I AND II), HAVE MORE THAN A NEGLIGIBLE CHANCE OF SUCCESS ON THE MERITS.

Bernatello's has brought claims against Hansen under both Section 32 of the Lanham Act for federal trademark infringement, 15 U.S.C. § 1114 (Count I), and Section 43(a) of the Lanham Act for unfair competition, 15 U.S.C. § 1125 (Count II). Bernatello's must establish the same effective facts for both of its Lanham Act claims. *See Packman v. Chicago Tribune Co*., 267 F.3d 628, 638 n.8 (7th Cir. 2001). In particular, Bernatello's "must establish that (1) [its]

16

mark[s] [are] protectable, and (2) [Hanson's] use of the mark[s] is likely to cause confusion among consumers." *Id.*

At the preliminary injunction stage, Bernatello's "need only demonstrate…that it has a 'better than negligible' chance of succeeding on the merits" to justify its request for injunctive relief. *Ty, Inc.,* 237 F.3d at 897; *see also Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1086 (7th Cir. 1988) ("[T]he plaintiff's burden at the preliminary injunction stage is slight"). This is a low requirement, amounting to nothing more than a "threshold question." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.* 549 F.3d 1079, 1096 (7th Cir. 2008). "The court considers each of these requirements in turn, keeping in mind that at this stage of the analysis, it must consider 'not whether the plaintiff will or will not prevail on the merits, but whether the plaintiff has demonstrated a better than negligible chance of establishing the "trademark" and "likelihood of confusion" prongs under section 43(a)'." *Unity Health Plans Ins. Corp. v. Iowa Health Sys.,* 995 F. Supp. 2d 874, 885 (W.D. Wis. 2014) (citations omitted).

Here, the evidence more than demonstrates that Bernatello's satisfies the threshold burden required to obtain a preliminary injunction so that it can stop Hansen's tortious conduct during the pendency of this lawsuit.

### A.     BREW Is A Valid, Protectable Trademark.

Bernatello's owns federal trademark registrations and applications pertaining to the following: BREW PUB PIZZA (U.S. Registration No. 4,373,576), BREW PUB PIZZA and Design (U.S. Registration No. 4,431,990), BREW PUB (Application Serial No. (86/978,114), IT'S BREW TIME (Application Serial No. 86/870,938), and BREW (Application Serial No. 86/838,514). (PFOF ¶ 38.) Bernatello's has used its BREW marks to generate business and market its BREW PUB pizza exclusively and continuously throughout the Midwest region of the

United States since at least as early as October 23, 2012. (PFOF ¶ 39.) Indeed, Bernatello's BREW PUB frozen pizza was the first to utilize a brand having BREW as its dominant element. (PFOF ¶ 40.)

Bernatello's federal registration of the BREW PUB PIZZA mark is prima facie evidence of validity, the registrant's ownership, and the right to exclusive nationwide use of the trademark. *See* 15 U.S.C. § 1115(a). Bernatello's also has trademark applications pending for the marks BREW, BREW PUB, and IT'S BREW TIME. (PFOF ¶¶ 37-39.) Bernatello's has directed extensive advertising and marketing efforts to ensure a connection throughout the Midwest and other geographic markets between Bernatello's BREW PUB pizza and the various BREW marks. (PFOF ¶ 42.) Bernatello's efforts have paid off because it has sold millions of BREW PUB pizzas under the BREW marks. (PFOF ¶¶ 62-63.)

> **B.** **Hansen's Use Of BREW In Branding Its Frozen Pizza Creates A Likelihood Of Confusion As To The Source Or Affiliation Of Hansen's Frozen Pizza Brands Utilizing BREW.**

The evidence also demonstrates that Hansen's unauthorized use of Bernatello's marks will cause confusion if this Court does not grant the requested injunctive relief. To determine whether a likelihood of confusion exists, the Seventh Circuit considers seven factors, including: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's." *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 812 (7th Cir. 2002). No single factor is dispositive of the analysis. *Int'l Kennel Club,* 846 F.2d at 1087 (citation omitted). Instead,

courts weigh and balance the factors "from case to case depending on the particular facts and circumstances involved." *Id.*

Here, as detailed below, the evidence supports a finding in Bernatello's favor with respect to each factor.

### 1. Hansen's BREWHAUS and BREW TIME marks are substantially similar to Bernatello's BREW PUB mark.

The first factor weighs heavily in favor of a finding of a likelihood of confusion because the branding of BREW PUB, BREWHAUS, and BREW TIME are all based on the key term BREW in relation to frozen pizzas. The Seventh Circuit recognizes "the rule that if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Int'l Kennel Club,* 846 F.2d at 1087-88 (citation omitted). Here, the BREW component in each mark is identical and presents the dominant aspect. Moreover, each of the marks includes a two-syllable pronunciation with the identical dominant BREW as the beginning term. Since consumers experience the BREW component first, the impression carries through for the entirety of the respective marks. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772,* 396 F.3d 1369, 1372-73 (Fed. Cir. 2005) (affirming TTAB's holding that contemporaneous use of appellant's mark, VEUVE ROYALE, for sparkling wine, and appellee's marks, VEUVE CLICQUOT and VEUVE CLICQUOT PONSARDIN, for champagne, is likely to cause confusion, noting that the presence of the "strong distinctive term [VEUVE] as the <u>first word</u> in both parties' marks renders the marks similar" (emphasis added)).

The similarity of the marks is further highlighted by the fact that the respective marks evoke the same mental impression—i.e., a tavern experience. *Ty, Inc.,* 237 F.3d at 898 (stating the "the comparison should be made in light of what happens in the marketplace, [and] not

merely by looking at the marks side-by-side") (citation and internal quotations omitted). For example, consumers will draw the same impression with PUB and HAUS—the notion of a small and comfortable "pub" or "haus" atmosphere, together with the socially inviting and dominant BREW. BREW TIME and BREW PUB similarly evoke the same impression among consumers of relaxation and respite.

Finally, the salience of the term BREW in each of the products reduces the importance of surrounding elements, such as a different logo. *See Ty, Inc.,* 237 F.3d at 899 (affirming better than negligible chance that consumers would attribute defendant's product to plaintiff even though Beanie Racers and Beanie Babies had distinctive hang tags and logos when placed side by side). Accordingly, due to the similarity of the marks and how consumers encounter the marks in the marketplace, the first factor weighs heavily in Bernatello's favor.

### 2. *Bernatello's and Hansen both use Bernatello's marks to advertise substantially similar products (frozen pizza).*

Although "goods or services do not need to be identical or even competitive in order for likelihood of confusion to exist," the goods at issue here are not only competitive but actually identical (super-premium frozen pizza versus super-premium frozen pizza). *Bishops Bay,* 301 F. Supp. 2d at 912. Not only do Hansen's BREWHAUS and BREW TIME frozen pizzas incorporate the term BREW, they also utilize packaging and ingredients highly similar to those of Bernatello's BREW PUB frozen pizza.

Among the evidence described in more detail above, Hansen has not only mimicked the ingredients and packaging of Bernatello's BREW PUB frozen pizza, it is also targeting the exact same customers and demographics. For example, Hansen's BREWHAUS and BREW TIME pizzas both use wide-dimensional, thickly shredded cheese placed on top of premium ingredients. In addition, Hansen's BREWHAUS and BREW TIME pizzas are sealed in identical

"bullseye" packaging as Bernatello's BREW PUB pizza, providing consumers with a visual of the quality and quantity of ingredients. (PFOF ¶¶ 77, 81-82.) Further, just like the keg tap and Wisconsin cheese images on Bernatello's BREW PUB pizza label, Hansen's BREW TIME pizza label includes what appears to be a keg tap and a statement announcing that it "contains over 1/2 pound of Real Wisconsin Cheese." (PFOF ¶ 83.) Hansen's has even mimicked Bernatello's marketing campaign to showcase its pizza to the public by utilizing the same type of mobile pizza oven trailer used by Bernatello's. (PFOF ¶ 78.)

Based on these significant similarities between the ingredients, packaging, advertising, and branding of BREW PUB, BREW TIME and BREWHAUS, as well as the direct competition between the products, the second factor weighs heavily in Bernatello's favor.

### 3. Hansen's BREWHAUS and BREW TIME pizzas will be sold in the same area and manner as Bernatello's BREW PUB pizza.

The third factor also weighs in Bernatello's favor because the evidence reflects that Hansen is improperly using Bernatello's marks to advertise its frozen pizzas in the same area and manner as Bernatello's frozen pizzas. When considering whether the area and manner of concurrent use between two marks is likely to cause confusion, several factors can be important, such as: the relative geographical distribution areas, whether there is evidence of direct competition between the products, whether the products are sold to consumers in the same type of store, whether the products are sold in the similar section of a particular store, and whether the product is sold through the same marketing channels. *Ty, Inc.,* 237 F.3d at 900; *see also Corbond Corp. v. Core Foam, Inc.* 356 F. Supp. 2d 910, 917 (W.D. Wis. 2005) ("[T]he 'area and manner of concurrent use' factor requires [courts] to consider whether there is a relationship in use, *promotion*, distribution, *or* sales between the goods or services of the parties.") (citation omitted; emphasis original). These considerations are effectively identical for Bernatello's and

Hansen's frozen pizza products.

Hansen's BREWHAUS and BREW TIME pizzas will be competing in the same market as Bernatello's BREW PUB pizza and targeting the same consumers based on the products' similar name, price, packaging, and quality and quantity of ingredients. (PFOF ¶ 94.) In addition, Hansen's BREWHAUS and BREW TIME pizzas will be sold in the same stores and geographic areas that Bernatello's currently sales BREW PUB pizza. (PFOF ¶ 93.) Frozen pizza brands, such as Bernatello's and Hansen, also share similar advertising and promotional opportunities, such as store circulars. Moreover, Hansen is also directly copying Bernatello's marketing strategies by utilizing a pizza oven trailer resembling that of BREW PUB to advertise BREWHAUS to the public. (PFOF ¶ 78.) These similarities will only increase the likelihood of consumer confusion if Hansen's conduct is not enjoined.

### 4. The average consumer exercises a low degree of care in purchasing frozen pizzas.

The application of the fourth factor also weighs in support of a finding of a likelihood of confusion. This factor considers the degree of care consumers will exercise in purchasing the products or services at issue. "[T]he lower the degree of ordinary care, the greater the likelihood of confusion." *Unity Health Plans,* 995 F. Supp. 2d at 890 (citation omitted). Courts must "stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Id.* (internal quotations and citations omitted). "The more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Id.* (citations omitted).

Since frozen pizzas are relatively inexpensive products frequently purchased by consumers without detailed scrutiny of the goods, an average frozen pizza consumer is an

"impulse buyer."  (PFOF ¶ 9);  *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.,* 735 F.3d 735, 739 (7th Cir. 2013) ("Generally only very cost-conscious consumers are apt to scrutinize carefully the labels of the less expensive items sold in a grocery store.")  As such, the average frozen pizza consumer will not exercise a high degree of care when purchasing frozen pizza.  Accordingly, the degree of care weighs in favor of Hansen's frozen pizza products being confused with Bernatello's BREW PUB pizzas.

### 5.    *The BREW PUB brand and mark is strong.*

The fifth factor weighs in favor of a finding of a likelihood of confusion because Bernatello's brand and marks are strong.  "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source."  *Unity Health Plans,* 995 F. Supp. 2d at 893 (citation omitted).  Until Hansen's recent infringing conduct, Bernatello's had been the sole provider of frozen pizza with a BREW brand name for over three years.  (PFOF ¶¶ 39-40, 95.)  Moreover, to develop the strength of the BREW trademarks throughout the Midwest and its other geographic markets, Bernatello's invested $3,920,486 on advertising and marketing since 2012.  (PFOF ¶ 43.)  These efforts included event sponsorships, in-store promotions, and purchasing print-based advertisements, among others.  (PFOF ¶ 48.)

Bernatello's marketing and advertising efforts have paid off.  BREW PUB pizza has grown in the marketplace, seen an ever-increasing level of sales, and has established a strong association in the frozen pizza market with the term BREW.  (PFOF ¶¶ 45-46.)  A customer who hears of, or is looking for, a tavern-type frozen pizza product will associate the product with BREW PUB due to the quality of the BREW PUB product and strength of the brand.  (PFOF ¶ 47.)

Even Bernatello's competitors and distributors acknowledge the strength of its BREW

marks. For example, a sell sheet introducing Hansen's BREW TIME pizza to potential distributors and grocery stores refers to the "pizza category" as "the Brew Pub Style!" before referencing the specific success of Bernatello's BREW brand. (PFOF ¶ 88.) Such evidence reinforces the strength of Bernatello's mark, and entitles Bernatello's to protection from Hansen's infringing conduct.

### 6. *Frozen pizza retailers have experienced confusion between Hansen's BREWHAUS or BREW TIME pizzas and Bernatello's BREW PUB pizzas.*

Although "the plaintiff need not show actual confusion in order to establish *likelihood* of confusion," evidence of actual confusion between Hansen's and Bernatello's frozen pizza products exists here. *Unity Health Plans,* 995 F. Supp. 2d at 893 9 (citation omitted; emphasis in original); *see also AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 829 (7th Cir. 2002); *Bishops Bay,* 301 F. Supp. 2d at 913. For example, managers at the Coborn's grocery store chain experienced confusion regarding the source or affiliation of Hansen's BREW TIME pizza and believed based on the product specifications and labeling that the product was associated with Bernatello's. (PFOF ¶¶ 114-112.) Similarly, the Vice President of Sales for Trig's full-service grocery stores decided not to carry or distribute Hansen's frozen pizza products in his stores because he was concerned that consumers and employees would mistake Hansen's BREWHAUS and BREW TIME frozen pizza for Bernatello's BREW PUB frozen pizza. (PFOF ¶¶ 109-113.) If experienced professionals in the grocery store industry are confused, the average consumer is likely to be confused as well.

### 7. *Hansen intentionally copied Bernatello's BREW PUB brand when creating its BREWHAUS and BREW TIME brands.*

Finally, the evidence supports that Hansen specifically intends to use the term BREW to trade upon Bernatello's goodwill to trick customers into purchasing its frozen pizza products.

Although a finding of fraudulent intent or bad faith is not essential to prove infringement, this Court can infer a likelihood of confusion "when there is proof of intentional copying because then the adoption itself indicates that defendants expected that likelihood to their profit." *Unity Health Plans,* 995 F. Supp. 2d at 894 (citations and internal quotations omitted). The Seventh Circuit recognizes that "the state of mind of an alleged trademark infringer is [] relevant to deciding whether consumers are likely to be confused . . . . ; if the infringer thinks they will be confused that is some evidence they will be." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F.2d 604, 611 (7th Cir. 1986).

The sequence of events here demonstrates that Hansen intentionally incorporated BREW into its frozen pizza branding to trade upon the consumer goodwill generated by Bernatello's extensive marketing efforts. After all, it was only after Hansen's earlier attempt to establish a super-premium pizza failed that Hansen rebranded its frozen pizza line to incorporate the same "BREW" terminology used by Bernatello's. By rebranding its BIG BEN pizza to BREWHAUS and BREW TIME, Hansen intends to deceive consumers into believing that its products are Bernatello's BREW PUB pizzas. (PFOF ¶¶ 97-100, 107-110, 117-122.) The Court should not condone such conduct.

To recap, all seven likelihood of confusion factors support that Hansen's use of BREW in branding frozen pizzas creates a likelihood of confusion. Accordingly, Bernatello's satisfies the better than negligible chance of success prong of the preliminary injunction inquiry.

### C. Bernatello's Has No Adequate Legal Remedy And Will Suffer Irreparable Harm If Its Request For A Preliminary Injunction Is Denied.

A finding of irreparable harm is justified where the finding is based on such factors as the difficulty of calculating damages, the loss of a unique product, loss of good will or reputation, loss of business opportunities, diminished competitive market position, or price erosion. *See,*

*e.g.*, *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1262–64 (10th Cir 2004); *see also Bio-Tech. Gen. Corp. v. Genentech, Inc*., 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding irreparable harm partly due to the fact that if the defendant were allowed to enter the market the plaintiff "would lose revenues and goodwill, and would be required to reduce its research and development activities"); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (agreeing with the district court that price erosion, loss of goodwill or loss of business opportunities are all valid grounds for finding irreparable harm because there is no effective way to measure loss of sales or potential growth).

In this case, Hansen's actions will cause direct, unquantifiable, and irreparable harm to Bernatello's if the Court does not enjoin Hansen from manufacturing and distributing pizza branded with the term BREW. For over three years Bernatello's has invested millions of dollars to develop a distinct, super-premium line of BREW type frozen pizzas. Not only has Bernatello's generated goodwill among consumers, but it has also developed invaluable business relationships with distributors and grocery stores throughout the Midwest. Bernatello's efforts resulted in nearly $40 million in sales in 2015. Hansen now wishes to trade upon the substantial goodwill generated by Bernatello's by entering a new, substantially similar frozen pizza product into the market that utilizes Bernatello's BREW marks. Clearly, without an injunction, Bernatello's stands to lose its competitive position, the ability to market a unique product, the business relationships it has endeavored to establish over a period of three years, its goodwill and reputation, and future business opportunities. This alone establishes Bernatello's irreparable harm. *Promatek Indus.,* 300 F.3d at 813 (recognizing that injury to goodwill is an irreparable harm for which there is no adequate remedy at law).

Moreover, the Seventh Circuit instructs courts to presume "that injuries rising from Lanham Act violations are…irreparable," even if the plaintiff cannot demonstrate a business loss. *Id.; see also Int'l Kennel Club,* 846 F.2d at 1091 ("[O]wner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, <u>though no loss in business is shown</u>.") (citation omitted; emphasis original); *Helene Curtis Indus. Inc. v. Church & Dwight Co.* 560 F.2d 1325, 1332 (7th Cir. 1977) ("[T]he damage to the goodwill and prominence of the Arm & Hammer trademark through public confusion of it with the Arm in Arm trademark is, in itself, an irreparable injury"). Since Bernatello's has established a better-than-negligible chance of success on its underlying Lanham Act claims, Bernatello's likewise "enjoys a presumption of a lack of remedy at law and irreparable harm for preliminary injunction purposes." *See Unity Health Plans,* 995 F. Supp. 2d at 895.

### D.     The Balance Of Harms Weighs In Bernatello's Favor.

In determining whether to grant an injunction, courts give consideration to whether the non-moving party would suffer greater harm than the moving party if granting injunctive relief. *Ty, Inc.*, 237 F.3d at 903. However, where a non-moving party's alleged harm from an injunction is self-inflicted, i.e., having knowledge of the moving party's trademarks prior to adopting its mark, then this consideration weighs in favor of granting the injunctive relief sought by the moving party. *Id.*; *see also Processed Plastic Co. v. Commc'ns, Inc.*, 675 F.2d 852, 859 (7th Cir.1982) (holding that a company did not suffer hardship after copying another's product because it "cannot now complain that having to mend its ways would be too expensive"); *see also Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) ("One entering a field already occupied by another has a duty to select a trademark that will avoid

confusion . . . . Having adopted [a trademark which causes confusion, defendant] cannot now complain that having to mend its ways will be too expensive.").

As detailed above, the evidence here demonstrates that Hansen is responsible for any harm resulting from an injunction. The evidence suggests that Hansen knew about Bernatello's development and use of the BREW marks with respect to super-premium frozen pizza, and Bernatello's success was even referenced in a sell sheet introducing Hansen's BREW TIME pizza to potential distributors and grocery stores. (PFOF ¶ 88.) Moreover, the evidence also supports the inference that Hansen intentionally copied Bernatello's use of the BREW mark after failing at its prior attempt to brand a new frozen pizza brand (BIG BEN). In other words, Hansen voluntarily created an infringing mark knowing full well that it could face legal challenges and negative financial consequences.

Further, the balance of harms would weigh in Bernatello's favor even if Hansen had made an innocent mistake when choosing to use BREW marks because Hansen has only just begun marketing its product and has not yet established any significant presence in the Midwest region. *See, e.g.*, 4 *Callmann on Unfair Competition, Trademarks & Monopolies* § 23:50 (4th ed. 2015) ("If the defendant has just begun the challenged act, he will not be subjected to undue hardship by the grant of a preliminary restraint."). Accordingly, the balance of hardships factor favors granting Bernatello's the injunctive relief it requests.

### E. Granting Injunctive Relief Is In The Public Interest.

The injunctive relief sought by Bernatello's is not adverse to the public interest. Instead, the public interest weighs in favor of granting Bernatello's motion because there is a clear public interest in preventing consumer confusion in the marketplace. *See Int'l Kennel Club,* 846 F.2d at 1092 n.8 ("In trademark infringement cases, the [Seventh Circuit has] stated that 'the relevant

consideration [in determining whether the public interest will be disserved by the grant of an injunction] is the consumer's interest in not being deceived about the products they purchased'.") (citations omitted).

Here, the public would be best served by an injunction against Hansen's use of the term BREW in relation to its frozen pizza products. If Hansen's is permitted to use BREW in connection with its BREWHAUS and BREW TIME frozen pizzas, frozen pizza consumers could be tricked into believing that they are purchasing a product associated with and/or connected to Bernatello's. This is particularly true given that the evidence demonstrates that Hansen deliberately mimicked Bernatello's product to trade upon the goodwill already generated by Bernatello's product. Accordingly, the requested preliminary injunction will ensure that the public is protected during the pendency of this lawsuit.

## III.    BERNATELLO'S REQUESTED INJUNCTION.

Bernatello's proposes that the Court enter the following injunction:

Hansen Foods, LLC and its subsidiaries and affiliates are enjoined from using the name "Brewhaus," "Brew Time," and any other name or mark that incorporates BREW or a confusingly similar mark, in connection with any frozen pizzas.

## CONCLUSION

For the reasons provided above, Bernatello's Pizza, Inc. respectfully requests that the Court grant its Motion for Preliminary Injunction.

Dated this 15th day of February, 2016.

<div style="margin-left: 50%;">

DEWITT ROSS & STEVENS S.C.


By:    /s Harry E. Van Camp
     Harry E. Van Camp (SBN: 1018568)
     Craig Fieschko (SBN: 1019872)
     Elijah B. Van Camp (SBN: 1100259)
     Two East Mifflin Street, Suite 600
     Madison, WI 53703-2865
     608-255-8891
     hvc@dewittross.com
     cf@dewittross.com
     evc@dewittross.com

ATTORNEYS FOR PLAINTIFF,
BERNATELLO'S PIZZA, INC.

</div>