IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BERNATELLO'S PIZZA, INC.,

                                  Plaintiff,

          v.                                                          OPINION & ORDER

HANSEN FOODS, LLC,                                                    16-cv-65-jdp

                                  Defendant.

---

Plaintiff, Bernatello's Pizza, Inc., brings claims of trademark infringement and unfair competition against defendant, Hansen Foods, LLC. Bernatello's has federal trademark registrations for the word mark BREW PUB PIZZA and for a design mark that incorporates those words, both for use with frozen pizza. Bernatello's contends that Hansen's recently adopted BREWHAUS and BREW TIME marks infringe its rights, and Bernatello's seeks a preliminary injunction.

The court held a day-long evidentiary hearing on the motion on March 18, 2016. Both sides presented evidence. Based on the evidence presented at the hearing, and the documentary evidence submitted with the parties' briefs, the court concludes that Bernatello's is entitled to a preliminary injunction against Hansen's use of marks that include the term "brew." The court will ask the parties to submit a proposed order for injunction that will provide an appropriate phase-out period to allow Hansen to exhaust its inventory and to allow for an orderly change to a new brand name. The parties should also submit their proposals, jointly if possible, for an appropriate injunction bond.

FINDINGS OF FACT

The court must address a preliminary issue before setting out the findings of fact. The court's rules for motions for injunctive relief require the moving party to set out the factual basis for the injunction in a statement of proposed findings of fact, and the party must cite evidence to support each proposed fact. *See* Procedure to be Followed on Motions for Injunctive Relief, available on the court's website. If the party opposing the injunction disputes any of the proposed facts, the opposing party must adduce evidence to put those facts in dispute.

Hansen did not properly oppose Bernatello's proposed facts because Hansen did not adduce evidence in opposition to them. Instead, Hansen objected to Bernatello's facts on the grounds that it lacked sufficient knowledge, or on the grounds of unspecified deficiencies in the foundation for the evidence supporting the proposed fact. Establishing foundation is part of the moving party's obligation, so the court would consider foundational objections, if they were specific and well-grounded. But Hansen's objections were not specific.[1] Bernatello's has amply supported its proposed facts with affidavit evidence, and Hansen's foundational objections are overruled. Bernatello's proposed facts, Dkt. 14, are deemed established.

Hansen's own proposed findings of fact in opposition to the motion were not authorized by the court's injunction procedures, because replies are not authorized, and thus the moving party has no opportunity to respond to facts proposed by the non-moving party.

---

[1] Some of Hansen's own affidavit evidence lacks foundation. Hansen's evidence purports to be based substantially on the personal knowledge of John Frey, its chief operating officer. Frey has been involved with Hansen since 2013. But Frey's declaration begins by rehearsing the history of Hansen Foods beginning in 1912, which is obviously not a matter within Frey's personal knowledge.

The court will nevertheless regard some of Hansen's proposed factual background as established because Bernatello's did not dispute those facts at the hearing.

Based on the parties' written submissions and the evidence presented at the hearing, the court finds the following facts.

Bernatello's Pizza, Inc., is a Minnesota corporation with its corporate headquarters in Edina, Minnesota. Bernatello's has manufactured and distributed frozen pizzas since 1982. Among the Bernatello's brands are Bellatoria, Orv's, and Roma, in addition to Brew Pub Pizza, the brand at issue in this litigation. Bernatello's brands vary in price, quality, and packaging to target distinct consumer groups. Brew Pub Pizza is in the "premium" (sometimes referred to as "super-premium") category of frozen pizza. The premium category is characterized by abundant high-quality toppings, particularly a large amount of cheese. Pizzas in the premium category generally retail for $9 to $11.

Bernatello's introduced Brew Pub Pizza in 2012. Bernatello's engaged Tom Jacobsen, an independent consultant with extensive industry experience in frozen foods, particularly pizza, to assist with its creation of a new pizza brand. Jacobsen identified the premium category as one likely to experience growth, whereas down-market segments of the frozen pizza market were stable or shrinking. In early 2012, Jacobsen came up with the name "Brew Pub" for a Bernatello's brand because it would capitalize on the growing interest in craft beer.

As it was later designed and executed, the Brew Pub Pizza packaging includes a design of a keg tap to reinforce the craft beer and pub associations. The Brew Pub Pizza packaging also displays the term "Lotzza Motzza" as a prominent element. Brew Pub Pizza uses high quality ingredients, including sausages that contain no fillers, and real Wisconsin cheese grated into wider strips than commonly used on frozen pizzas. The retail price of a Brew Pub

Pizza is ordinarily $10.99, but on special promotions it may be priced as low as $5.99. Brew Pub Pizzas are manufactured in twelve varieties in a multi-serving portion size and five varieties in single-serving sizes. Each Brew Pub Pizza is sealed in a clear wrap with a small circular label on the top center of the pizza, a format known as "bullseye" packaging. Bullseye packaging allows consumers to see the pizza ingredients, which is considered an advantage for premium pizza.

Bernatello's has three federal trademark registrations pertinent to this case:

BREW PUB PIZZA (words only); U.S. Reg. No. 4,373,576; application date June 29, 2012; registration date July 23, 2013;

BREW PUB PIZZA and design; U.S. Reg. No. 4,431,990; application date March 21, 2013; registration date November 12, 2013;

BREW PUB; U.S. Reg. No. 4,906,320; application date April 10, 2014; registration date February 23, 2016.

Bernatello's also has several applications pending for related terms, including IT'S BREW TIME, BREW, and PUB, although these applications were made after the current dispute arose, and thus they have no bearing on the issues before the court.

Bernatello's markets its frozen pizzas using a "direct store delivery" model, in which it uses its own personnel and fleet of trucks to deliver products directly to grocery stores. It uses an independent distributor for what it calls "small format" retailers, primarily convenience stores and taverns.

Brew Pub Pizza has been commercially successful: in 2013, Bernatello's sold 2.4 million units, generating $12.8 million in revenue; in 2014, 4.8 million units, producing $24.6 million in revenue; and in 2015, 7.8 million units, representing $39.8 million in

revenue. In the year ending September 2015, Bernatello's Brew Pub Pizza was a top-ranked brand among all frozen pizza brands in the Midwestern market.

At the time of its introduction in 2012, Brew Pub Pizza was the only premium frozen pizza sold or promoted as a "pub-style" or "tavern-style" pizza. No other frozen pizza was marketed with the term "Pub" or "Brew" on its packaging. However, since the introduction of Brew Pub Pizza, several competitors have marketed premium pizza as either tavern-style pizza (Green Mill Restaurant, Defense Ex. 2) or pub-style pizza (P'Mos Pub Pizza Co., Defense Ex. 3; Luige's Big Daddy, Defense Ex. 4).[2]

Hansen Foods, LLC, is a Wisconsin limited liability company with a principal place of business in Green Bay, Wisconsin. Hansen was founded in 1912 as a dairy delivery business, and its business has expanded to include private label pizza manufacturing. Beginning in 1995, Hansen produced Pep's brand pizzas for Pep Simek, who had been the founder of Tombstone Pizza. After Simek died in 2013, Hansen purchased the Pep's brand and began marketing frozen pizza under its own label. At its peak, Hansen produced approximately 800,000 frozen pizzas a year under its two brands: Pep's Original, mid-market pizza; and Big Ben, in the premium category. Hansen has other lines of business that are not pertinent to the trademark issues before the court.

In 2013, Michael Fechter and John Frey bought Hansen. At the time, Hansen's frozen pizza sales had diminished to approximately 300,000 pizzas per year. Frey and Fechter had been partners in a container management and services company that sold beer kegs and valves and related services. In early 2014, Hansen moved distribution of its pizzas to Cedar

---

[2] Because the paper exhibits provided at the hearing will not scan well, the court will ask the parties to file electronic copies of their hearing exhibits.

Crest Ice Cream, which in addition to manufacturing and distributing its own products, served as a third-party distributor for other grocery products and had an extensive distribution network, primarily in Wisconsin.

In 2014, Cedar Crest advised Hansen that it needed to update its brand to prevent a loss of market share. Hansen began the process of rebranding its pizzas in 2015. Hansen management decided to include the Pep's name on all its pizza. Craig Bauer, the marketing director of Hansen Foods, advised dropping the Big Ben name from its premium pizza, which the management group of Hansen approved in the middle of February 2015. Bauer researched the pizza industry online, reviewing existing premium category pizzas, and on the basis of this review he concluded that there was a trend toward heavy-topping, tavern-style pizzas. Bauer wanted to avoid the same graphic look as the existing products, so he reviewed the websites for restaurants and breweries, particularly microbreweries. He found the websites and graphic presentation of microbrews to be a source of inspiration for the graphic presentation of the new Hansen premium pizza brand. He came up with about four proposals for the name, including Brewhaus, Ale House, Tap Room, and Brew Time. In about the middle of 2015, he settled on Brewhaus as the proposed name, which he thought evoked a more upscale product. There is no evidence that Bauer or anyone else at Hansen did a search of trademark registrations or otherwise sought a legal opinion concerning the legal availability of the name Brewhaus.

During the fall and winter of 2015, Hansen struck a deal with Topco, a supermarket distribution cooperative with more than 50 members. Topco's members include the major midwest grocery store chains Coborn's, Inc., HyVee, Inc., Meijer, Inc., Piggly Wiggly Midwest, LLC, and Roundy's Supermarkets, Inc. Hansen created a variation of the Brewhaus

brand called "Brew Time" for distribution through Topco. Topco provided some feedback on the design of the Brew Time label, but they accepted the name proposed by Hansen, Brew Time.

Soon enough, Bernatello's personnel found out that Hansen was rebranding its premium pizza and planning to use the name Brewhaus. Bernatello's general manager James Cousin called Fechter on December 2 or 3, 2015, to object to Hansen's proposed use of the name Brewhaus. The parties may have engaged in some further discussions of the matter, but there is no evidence that Bernatello's ever acquiesced to Hansen's use of Brewhaus. But Hansen proceeded anyway. On December 9, 2015, Hansen filed an intent-to-use application for the mark BREWHAUS for pizza. (U.S. Application Serial No. 86844156.) And, despite Bernatello's objections, Hansen proceeded to market with both Brewhaus pizza and Brew Time pizza. Brewhaus Pizza was first available to the market on January 21, 2016. Brew Time was first available in February 2016.

In a sell sheet developed to promote the Brew Time brand to Topco members, the Brew Time product was described as follows:

> The Brew Time Brand was developed exclusively for Topco and our members by Hansen Foods (Green Bay) as a private brand solution for what has recently emerged as a very popular & rapidly growing segment within the pizza category—the Brew Pub Style! Per IRI, the leading national brand, Lotzza Motzza, is 130% up in sales over the same period last year, and is expected to grow even more in 2016. Like the brand, our Brew Time pizzas claim ½ pound of real cheese and are heavily topped with premium ingredients. The Brew Time brand can offer your customers a more affordable private brand alternative that delivers the same high quality pizza that is just as capable of inducing a cheese coma.

Plaintiff's Ex. 31. The Topco sell sheet indicates that the pricing for Brew Time pizza would be $6.99 every day, and $5.99 on promotion.

7

At the hearing, Michael Fechter, Hansen's chief executive officer, was unable to estimate the sales of Brewhaus pizza. As for Brew Time, he testified that Hansen had filled one purchase order for two truckloads, which would be $20,000 worth of pizza.

Bernatello's submitted evidence that management from two grocery store chains, Coburn's and Trig's, have expressed concerns that the Brewhaus brand would create a likelihood of confusion with the Brew Pub brand.

The court has subject matter jurisdiction over Bernatello's claims pursuant to 28 U.S.C. § 1331, because they arise under federal law.


ANALYSIS

To obtain preliminary injunctive relief, Bernatello's must demonstrate: (1) that it has a better-than-negligible chance of success on the merits; and (2) that it has no adequate remedy at law and that it would suffer irreparable harm without preliminary relief. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), *as amended*, (Oct. 18, 2002). Once these two preliminary elements are satisfied, Bernatello's must then show that the harm it would suffer without the injunction would outweigh the harm that Hansen would suffer if the injunction issued. *Id*. Bernatello's must also show that the public interest would not be negatively affected by the injunction. *Id*. The stronger plaintiff's case on the merits, the less the balance of harms needs to tip in favor of plaintiff to support the injunction. *Id*.

## A. Bernatello's likelihood of success on the merits

To succeed on its Lanham Act claims, Bernatello's must show: (1) that it has a protectable interest in its trademarks; and (2) that Hansen's use of the marks is likely to

cause confusion among consumers. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

Bernatello's federal trademark registrations for the word mark BREW PUB PIZZA and for the design incorporating those words are prima facie evidence of the validity and Bernatello's ownership of these marks. In view of its federal registrations, Bernatello's has the presumptively exclusive nationwide right to use those trademarks in connection with frozen pizza. Hansen has not raised any objection to the validity of Bernatello's registrations, and it does not contend that Bernatello's does not have a protectable mark. The question is whether Hansen's use of Brewhaus and Brew Time would pose a likelihood of confusion with Bernatello's Brew Pub Pizza marks.

In the Seventh Circuit, the likelihood of confusion analysis is parsed into seven factors: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care exercised by consumers; (5) the strength of the plaintiff's marks; (6) any evidence of actual confusion; and (7) the defendant's intent to palm off its goods as plaintiff's. *Promatek Indus.*, 300 F.3d at 812. No single factor is dispositive; courts weigh and balance the factors depending on the circumstances involved. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678 (7th Cir. 2001).

### 1. Similarity of the marks

Brewhaus is, on its face, highly similar to Brew Pub. At the hearing, both sides acknowledged that "Brew" is the dominant portion of both marks. Brewhaus is synonymous with Brew Pub; the similarity at this level is undeniable. The similarity is less striking with Brew Time. But in light of the parties' concession that "Brew" is the dominant portion of both marks, Brew Time and Brew Pub are also strongly similar as marks for frozen pizza.

Hansen's primary argument with respect to similarity of the marks is that the BREW PUB PIZZA trademark is just one aspect of a complex product identity in which Brew Pub plays only a subsidiary role. On the package itself, the Brew Pub Pizza name and logo is smaller than the term Lotzza Motzza, which Hansen contends is the dominant part of the product identity. On the Brewhaus package, the Brewhaus name is larger, and the package also includes "Pep's Pizza." And, as Hansen rightly contends, the graphic similarity of the two labels is not strong. Although both products use bullseye packaging, that packaging format is apparently the universal choice for frozen pizzas in the premium category.

At the hearing, Bernatello's showed that pizza packaging often includes wording that is larger and more prominent than the pizza brand. But Bernatello's examples showed *descriptive* terms that were larger than the brand, such as the term "Pan Pizza" on the Bellatoria package; the term "Naturally Rising" on the Freschetta package; and the term "Rising Crust" on the Red Barron package. Defense Ex. 39. This argument is much weaker with respect to the term "Lotzza Motzza" that Bernatello's uses. The term is somewhat descriptive because Brew Pub Pizza contains a great deal of mozzarella cheese. But Bernatello's has sought and secured federal registration for "Lotzza Motzza," which forecloses any argument that Bernatello's regards Lotzza Motzza as merely a descriptive term. Bernatello's cannot dispute that Lotzza Motzza is actually part of its brand identity. Moreover, Hansen adduced evidence that showed that some consumers believe Bernatello's brand to be Lotzza Motzza, or at the very least that the brand is Brew Pub Lotzza Motzza. Hansen has a decent argument that the trade dress of the two products, and the complex brand identity, helps distinguish the two products.

10

But Hansen's argument has its limits, primarily because the trademarks are not encountered only on packages displayed side-by-side on the grocery store shelf. Bernatello's has demonstrated that both parties promote their brands with pizza oven trailers from which products and samples are distributed at public events. The Bernatello's trailer features the Brew Pub logo very prominently, and the Hansen trailer features the name Brewhaus most prominently. Bernatello's also adduced evidence that in social media promotion, Bernatello's refers to its pizza as Brew Pub Pizza, and in grocery store advertising, the products are sometimes only identified by name, without a photograph of the product itself. The bottom line is that consumers will regularly encounter the word marks Brew Pub Pizza and Brewhaus in the marketplace, and not just in side-by-side comparison of the packaging. The proper standard for evaluating the similarity of the marks is not whether the consumer could detect a difference in a side-by-side comparison. Rather, the standard is whether a consumer familiar with plaintiff's trademark would be confused if he or she encountered the defendant's mark. *See Packman*, 267 F.3d at 643 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001)).

Bernatello's has made a strong showing that the marks are similar enough to make consumer confusion likely. This factor counts in favor of Bernatello's, particularly with regard to the Brewhaus mark.

### 2. Similarity of the products

The products are the same: premium frozen pizzas. This factor counts strongly in favor of Bernatello's.

### 3.  The area and manner of concurrent use

The area and manner of use is highly similar. Both parties sell their products in grocery stores, convenience stores, and taverns. Although Bernatello's area of distribution is somewhat larger than Hansen's, the most likely area of distribution of Hansen's products lies within Bernatello's geographic market. Bernatello's distributes its own products to grocery stores through its direct store distribution method, whereas Hansen uses a third-party distributor. But that is a distinction of no real consequence because Hansen reaches the same types of retailers, including some of the very same retailers. The bottom line is that the ultimate consumers are the same and that the intermediate decision makers, the owners of grocery stores, taverns and convenience stores, are also the same.

This factor also counts strongly in favor of Bernatello's.

### 4.  Degree of consumer care

The degree of care exercised by consumers of premium frozen pizza is disputed. Bernatello's adduced testimony, albeit somewhat conclusory, that frozen pizza is typically an impulse purchase in which the care exercised by the consumer (or lack thereof) does not alleviate concern over potential confusion. Hansen adduced no evidence to contradict this testimony. But Hansen cites authority holding that a $20 restaurant purchase was not one that was so impulsive as to have the consumer care factor count in favor of the plaintiff. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000). Low-priced grocery store items are usually considered the prototype of the impulsive purchase. *See, e.g.*, *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 739 (7th Cir. 2013). But premium frozen pizza is not at the bottom of the market like the "belly-filler"

12

pizzas that the parties acknowledge are low-priced commodities purchased primarily because of price.

Although the parties produce low-priced items that would not prompt the kind of deliberation that one would bring to the purchase of an automobile, the evidence does not establish that consumers are so cavalier in their choices that confusion is likely. This factor is neutral.

### 5.  Strength of the Brew Pub Pizza mark

The strength of a trademark refers to the mark's distinctiveness, which indicates its propensity to identify the provider of a product, and to distinguish that product from those of others. Strength of trademarks is commonly conceptualized as a spectrum, with coined terms and arbitrary marks on the strong end, suggestive terms in the middle, and descriptive terms on the weak end. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (adopting Judge Friendly's formulation in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976)). Generic terms for products, such as "pizza" in this case, are so weak that, on their own, they are not entitled to trademark protection.

The term "Brew Pub" is not descriptive of frozen pizzas, although it evokes a beverage that is closely associated with pizza. Bernatello's presented evidence that it was the first provider to associate premium frozen pizza with beer, brewing, pubs, or taverns. Now, however, it is more commonplace for premium frozen pizza to be identified as "pub-style" or "tavern-style." Nevertheless, as Bernatello's points out, it is the only entity to use the term "brew" in connection with its pizza, or at least it was until Hansen came along. Thus, Brew Pub Pizza is itself a medium-strong suggestive mark.

13

Bernatello's also contends that its mark is strengthened because of the substantial marketing effort that supports it. Bernatello's adduced evidence that it had invested nearly $4 million on marketing and advertising Brew Pub Pizza since 2012. Bernatello's also adduced evidence showing significant success in the marketplace. Hansen did not dispute the evidence that Brew Pub Pizza is the leading premium frozen pizza brand, and in fact is among the leaders in frozen pizza sales in all categories.

The strength of the mark factor tips in favor of Bernatello's.

### 6. Incidents of actual confusion

Evidence of actual consumer confusion can be very compelling evidence of the likelihood of confusion, but it is not strictly required. *CAE, Inc.*, 267 F.3d at 685.

Bernatello's presented testimony from two managers of grocery store chains (one live, one by affidavit) expressing the opinion that consumers would be confused by Hansen's use of the term Brewhaus. Michael Gaetz, Senior Category Manager for Coborn's, Inc., testified by affidavit that he believed that consumers would be confused by Brew Time, but his declaration does not indicate that he or any Coborn's staff was *actually* confused. Accordingly, the Gaetz affidavit is essentially a conclusory expert opinion about the likelihood of confusion, not evidence of actual confusion. For the same reason, the court will accord little weight to the hearing testimony of Alan Alden, vice president of Trig's, who testified that he believed that consumers would be confused by Hansen's use of Brewhaus. Because the court discounts the testimony of these two witnesses, the court regards this factor as neutral.

### 7. Defendant's intent

Intent or bad faith is not a required element of a trademark infringement claim. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992). But proof of

intentional copying, when shown, is a factor that strongly supports a finding of likelihood of confusion. *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir. 1983).

This is certainly not a prototypical counterfeiting case in which the defendant resolutely copied plaintiff's labelling to deceive grocery stores or grocery store consumers into believing that it was selling genuine Bernatello's Brew Pub Pizza. And the evidence adduced so far would not establish such bad faith to support an award of enhanced damages under 15 U.S.C. § 1117(a). But the evidence does not place Hansen's intent beyond reproach either.

The evidence shows that Hansen intended to capitalize on the success of a marketing trend started by Bernatello's—promoting premium frozen pizza by associating it with craft brewing. But capitalizing on that trend is fair competition. Bernatello's may have started the trend, but now it is commonplace for providers of premium pizza to associate their products with taverns, pubs, or craft brewing. Bernatello's has not objected to Palermo's use of P'Mos Pub Pizza Co., so Bernatello's cannot at this point object to anyone associating their frozen pizza with pubs or taverns. But fair competition does not include intentionally capitalizing on Bernatello's brand identity by exploiting consumer confusion. The testimony at the hearing was that Topco, not Hansen, wrote the copy for the Topco sell sheet. But that sell sheet suggests that Hansen was attempting not only to compete in the premium frozen pizza category, but also to emulate Bernatello's brand identity by highlighting the term "Brew." The fact that Hansen proceeded to market under the Brewhaus and Brew Time marks even after Bernatello's objected rules out the possibility that this was a purely innocent error.

Nevertheless, the evidence falls short of establishing Hansen's intent to create confusion and exploit it. Because intent is not required to show a likelihood of confusion, this factor is neutral.

15

### 8.  Summary of factors

In sum, none of the likelihood of confusion factors counts in favor of Hansen; some are neutral. Several important factors, particularly the similarity of the marks and the products, and the overlapping territories of use and customer base, count heavily in favor of Bernatello's. On balance, the court concludes that Bernatello's has made a strong showing of likelihood of success on the merits. Hansen's sincere effort to adopt a different trade dress does not change the fact that Hansen selected word marks that pose a substantial likelihood of consumer confusion.

## B.  Adequacy of legal remedies

Bernatello's must also demonstrate that it has no adequate remedy at law. This is a separate consideration from whether Bernatello's would suffer irreparable harm, although the considerations are related, and Bernatello's presents essentially the same evidence for both.

Typically a legal remedy is inadequate for one of four reasons: (1) damages would come too late to be of meaningful value to the plaintiff; (2) plaintiff might not be able to afford the full litigation; (3) the defendant might not be collectible at the end of the litigation; or (4) the monetary damages might be too difficult to calculate. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Bernatello's has not made any showing that it could not afford the litigation, or that Hansen would not be collectible, or that the payment of damages would come too late to be meaningful to Bernatello's.

This is the type of case in which damages would be difficult to calculate. At the end of this trial, the trier of fact could determine the number of Brewhaus and Brew Time pizzas that Hansen had sold and calculate some reasonable compensation for the infringing products. But trademark infringement almost inevitably damages the goodwill and reputation

16

of the trademark owner and impairs the trademark owner's prospects in ways that are not readily calculable.

Bernatello's adduced evidence of this point. For example, Brew Time pizza sold through Topco is purported to have an everyday price of $6.99, which, if customers are confused, could erode the everyday price that Bernatello's could charge for its Brew Pub Pizzas. Chad Schultz, Bernatello's Vice President of Sales and Marketing, testified that if a Brewhaus or Brew Time pizza was advertised as being on sale, a consumer who inadvertently purchased a Brew Pub Pizza at full price might be irritated when he or she did not get the discounted price that they expected. If consumers who intended to purchase a Brew Pub Pizza inadvertently ended up with a Brewhaus or Brew Time pizza and did not like it, that customer might forever be lost to Bernatello's. And, again as Schultz testified, if Hansen were to have a recall event for Brewhaus or Brew Time pizza, that would tarnish the Brew Pub reputation if consumers were confused about the brands. These are all ways in which the value of the Bernatello's Brew Pub Pizza marks could erode, and these intangible damages would be very difficult to prove and quantify at trial.

Accordingly, because the full extent of Bernatello's damages would be difficult to calculate, as is typical in trademark disputes where the plaintiff's reputation is at risk, the court concludes that Bernatello's has demonstrated that it has no adequate remedy at law.

## C.  Irreparable harm

The third inquiry is whether Bernatello's would suffer irreparable harm if the court denied the preliminary injunction.

This raises a legal question that the parties have not resolved, namely, whether injuries arising from Lanham Act violations are presumed irreparable. Bernatello's cites

17

Seventh Circuit precedent to this effect. *See, e.g., Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). But the cases on which Bernatello's relies predate the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, which held that in patent cases, irreparable harm is not presumed but must be proven. 547 U.S. 388, 391 (2006). The Court reasoned that the Patent Act provided no exception from the common law, which required the traditional four-factor showing to secure injunctive relief.

The Lanham Act, like the Patent Act, does not expressly state that irreparable damage is presumed. Indeed, the Lanham Act states that the prevailing party may receive injunctive relief "according to the principles of equity." 15 U.S.C. § 1116(a). The question of whether the rationale of *eBay* applies to Lanham Act claims remains an open question in the Seventh Circuit. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:47.30 (4th ed. 2015). But as McCarthy observes, there might be good reasons why irreparable injury should be presumed in trademark cases, though not in patent cases. A trademark is essentially the embodiment of the owner's reputation, and reputational and unquantifiable market harms flow almost automatically from the likelihood of confusion and the loss of control over one's trademark, which are elements of a successful trademark claim.

Proving irreparable harm is doubly complicated in a case like this one, where the plaintiff seeks an injunction almost as soon as the infringing product hits the market. In this case, Brewhaus and Brew Time pizzas have been on the market only briefly in small amounts, so Bernatello's cannot yet point to any significant loss of market share, incidents of consumer confusion or dissatisfaction, or price erosion.

But the court need not rely on a presumption. Bernatello's has done what it can reasonably be expected to do at this point. It has shown that there is a significant probability

that over the course of the next year, Hansen is poised to achieve significant success in the marketplace, particularly through its distribution arrangement with Topco. Through Topco, Hansen has the potential of reaching retailers with total sales of $120 billion. (Based on the Topco promotional materials, Plaintiff's Ex. 7.) The court finds it particularly significant that the Topco sell sheet purports to sell the Brew Time pizza at $6.99, $4.00 cheaper than the standard price for Brew Pub Pizza. And some of Topco's members are grocery store chains to which Bernatello's sells directly. To be clear, Bernatello's cannot complain about Hansen or Topco offering a competing premium pizza at $6.99. But if Hansen attracts business to its Brew Time pizza because consumers believe that it is a cheaper version of the Brew Pub Pizza, Bernatello's sales of its Brew Pub Pizza may be permanently lost to other competitors. And after Hansen promotes a confusingly similar premium pizza at $6.99, Bernatello's may not be able to sell premium pizza at $10.99, even if Hansen is forced to change its brand name when this case concludes a year from now.

Regardless of whether irreparable harm is presumed, the court finds that Bernatello's has shown that it will suffer such harm without a preliminary injunction.

**D.  Balance of harms**

Because Bernatello's has made its threshold showings, the court weighs the remaining factors. Hansen concedes that it would be relatively easy to re-design and re-print its label. According to Hansen's witnesses, the name on the label could be changed in 20 minutes, and new labels could be printed within a few weeks. Nevertheless, Hansen contends that it would suffer permanent harm because grocery stores would require Hansen to establish a new SKU number for the rebranded products, and this process would take a long time. Hansen customers have begun to accept the Brewhaus and Brew Time products, and there is no

19

guaranty that they would accept the same products with a different name and a different SKU number.

The court does not find this testimony persuasive. First, Fechter was unable to quantify Hansen's sales of Brewhaus pizza, and sales of Brew Time pizza are minimal. Thus, Hansen has not shown that it has a large base of retailers committed to Brewhaus and Brew Time. Second, Hansen did not support its assertion that retailers would be reluctant to switch to a new name with testimony from any of its retailer customers. Thus, Fechter's testimony is mostly conclusory and speculative. Third, Hansen's accused products are, at this point, virtually brand new. The harm to Hansen from an injunction will only increase with time.

The court finds that Hansen will face significantly less harm with the injunction than Bernatello's will suffer without it. Nevertheless, the injunction the court will issue will provide for a transition period to alleviate the harm to Hansen that might result from an abrupt transition to new brand names.

**E.  The public interest**

Bernatello's must also show that the issuance of the requested injunction is not adverse to the public interest. Both sides invoke the usual general principles concerning the public interest. Bernatello's contends that avoiding consumer confusion is in the public interest. Hansen counters that the public has an interest fostering competition. The court concludes that neither side has adduced evidence that the public interest would be harmed or advanced by an injunction against Hansen's use of the terms Brewhaus or Brew Time in connection with frozen pizzas. The public interest does not tip the analysis one way or the other, but it imposes no impediment to the issuance the injunction requested by Bernatello's.

20

CONCLUSION

Hansen asks the court to forbear issuing an injunction on a partial record, which is a legitimate concern with any preliminary injunction. Perhaps the parties will adduce survey evidence concerning the likelihood of confusion, or compelling evidence of actual confusion. But at this point, Hansen has not pointed to any particular evidence that it contends will vindicate it. The court must make the decision on the basis of the evidence at hand, which the parties had an adequate opportunity to develop, and an ample opportunity to present.

The court concludes that Bernatello's is entitled to a preliminary injunction against Hansen's use of any trademark that uses the term "brew," or any variant of "brew." But Bernatello's has not submitted a proposed form of injunction. Nor has it proposed any security for the injunction, which would be required under Rule 65(c).

The court will not issue any injunction order in this case until Bernatello's submits a proposed injunction order and a proposal for adequate security. The parties must confer on both these matters, and if possible, make a joint submission. If the parties are unable to reach agreement, Bernatello's may have until April 8, 2016, to submit its proposal. Hansen may have until April 15, 2016, to submit any objections.

ORDER

IT IS ORDERED that:

1. Plaintiff Bernatello's Pizza, Inc.'s motion for preliminary injunction, Dkt. 7, is GRANTED.

2. The parties will submit proposed injunction orders and proposals for adequate security—jointly, if possible—by April 8, 2016. If the parties are unable to submit joint submissions, they will submit their separate proposals according to the schedule articulated above.

3.  The parties will file electronic copies of their hearing exhibits by April 1, 2016.

Entered March 25, 2016.

BY THE COURT:

s/ James D. Peterson
_____
JAMES D. PETERSON
District Judge